# BABBITT,
*Petitioner,*

*v.*

# MARI-LINN SCHOOL DISTRICT
## NO. 29-J,
*Respondent.*

## (FDA 86-2; CA A43463)

764 P2d 954

James M. Brown, Salem, argued the cause for petitioner. With him on the brief was Enfield, Guimond & Brown, Salem.

William G. Paulus, Salem, argued the cause for

respondent. With him on the brief was Garrett, Seideman, Hemann, Robertson and De Muniz, P.C., Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Petitioner seeks review of an order of the Fair Dismissal Appeals Board (FDAB) which dismissed his appeal from his termination by respondent school district. The only issue in this case is whether petitioner was employed by respondent as a "superintendent" within the definition of ORS 342.815(3). If he was, the provisions of the Fair Dismissal Law do not apply to him and FDAB was correct in dismissing his appeal for lack of jurisdiction. We hold that petitioner was a superintendent and affirm.

Petitioner does not challenge FDAB's findings of fact, the pertinent portions of which we set out below:

"1.   Respondent is a school district of the State of Oregon located in the Mehama-Lyons area and is a fair dismissal district under the state Fair Dismissal Law. It operates only one school, an elementary school for grades kindergarten through eighth grade.

"2.   In 1964, on a form [filed] by respondent with the Oregon Department of Education, * * * statements are made with respect to areas of 'School Board,' 'Superintendent' and 'Principal' [which indicate] the 'Principal' is the administrative officer directly responsible to the school board.

"* * * * *

"3.   The immediate predecessor in [petitioner's] position [served] in the position from 1965 to 1971. [Petitioner] was hired in 1971 and continued in the position until he was terminated, effective June 30, 1986, by written notice from the school board dated March 31, 1986. Both [petitioner and his predecessor] were ordinarily referred to as the 'Principal.' Most of the time of the person in that position was * * * spent in duties typically considered to be those of an elementary school principal, such as supervision and evaluation of teachers, discipline of students, etc. [Petitioner] also occasionally taught classes for one period a day to fill in for teachers involved in other activities.

"4.   [Petitioner] was at all times regarded by the school board and by himself as the board's chief administrative officer.

"5.   From the beginning of his employment with respondent, the school board considered [petitioner] to be the person who was to carry out the decisions of the board and manage the district's operations. With few exceptions,

[petitioner] carried out the duties or responsibilities normally carried out by a district superintendent.[1]

"6. When [petitioner] was hired in 1971, he signed a written contract, consisting of a printed form designated 'Teacher's Contract,' with blanks for dates, etc. That contract provides that 'the teacher agrees to Administrate the grades in the schools of the district.' It is otherwise silent as to the nature of the position for which the [petitioner] was employed or the nature of the duties he was to perform. The contract for his [second and third years] were on the same type of printed form. On the contract for the second year the word 'teacher' in the preamble is x'd out and the word 'Administrator' has been typed in. Otherwise, on all three contracts the reference to [petitioner] is always a reference to 'Teacher' or 'the teacher.' [The school board's deputy clerk] prepared all three of the contracts * * *. Each contract also contains the signature of the school board chairman.

"* * * * *

"7. For [petitioner's] fourth year of employment, and for succeeding years, a printed form was used for contracts with [petitioner] that was entitled 'PERMANENT TEACHER'S CONTRACT.' Again, the contract form throughout refers to the [petitioner] as 'Teacher' or 'the teacher.' The contract does not identify the nature of [petitioner's] position, does not indicate what duties are to be performed by him and does not even indicate that he is to 'administrate the grades.'

"* * * * *

"The record does not indicate why the school board or the deputy clerk did not utilize a contract form applicable to an administrative type of employe and it does not indicate that the school board or the deputy clerk placed any importance on the printed language of the contract form beyond that necessary to show [petitioner's] name, address, telephone, employment period, salary and certification. The school board

---

1 FDAB found that during his employment with the district, petitioner had

"[attended] almost all board meetings; was twice designated by the school board as the district's 'surplus property' officer; carried out the budget officer functions; dealt with agents and firms with regard to insurance coverage for the district; obtained vehicle repair estimates; handled contracts with construction firms; was the district's affirmative action officer; dealt with attorneys and others on legal matters such as lawsuits, deeds and leases; managed the bus transportation program; accepted a roof repair bid on his own to enable the repair work to begin; negotiated on purchase of a new school bus; kept track of building maintenance needs for the board; dealt with the auditors on behalf of the district; represented the district in application for federal funds; was the designated 'Title I Officer'; was the school board's designated agent for collective bargaining; etc."

minutes contain no indication of the reason for the change in the printed form used for the contract beginning in 1974.

"8.   From the beginning of [petitioner's] employment, the majority of [his] time was spent performing the duties of elementary school principal, but both the school board and [petitioner] considered [him] to be the district's superintendent as well as its principal.

"* * * * *

"9.   Some school board members, in 1985, expressed dissatisfaction with [petitioner's] performance and the board gave him a written evaluation in January of 1986. On March 26, 1986, the board voted to 'nonrenew' his contract for the 1986-87 school year. The board did not comply with Fair Dismissal Law procedures in so terminating [petitioner].

"10.   [Despite his familiarity with] the Fair Dismissal Law and permanent teacher status, [petitioner] never made any claim to the school board prior to March of 1986 that he himself had permanent teacher status and he never prior to that date otherwise indicated that he considered himself as having such status. [The] board never had any belief or understanding that [petitioner] had tenure or 'permanent' status and it never attached any significance to the titles of the contract forms used for [petitioner's] employment."

Petitioner argues that FDAB erred in holding that he had the burden of proving that it had jurisdiction to hear the appeal. FDAB noted in its ruling on the petition for reconsideration that respondent did not have the burden of proving jurisdiction, but concluded that even if it did, it had met that burden by proving that petitioner was a superintendent. Therefore, the error, if any, would be harmless. *See Wagenblast v. Crook County School Dist.,* 75 Or App 568, 573, 707 P2d 69 (1985).

Petitioner next argues that FDAB erred in concluding that he was a superintendent and, therefore, not subject to the Fair Dismissal Law. The dismissal procedures of the Fair Dismissal Law apply only to "permanent teachers." ORS 342.845 to ORS 342.895. ORS 342.815(5) defines a "permanent teacher" as "any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive school years and who had been reelected by the district after the completion of such three-year period for the next succeeding school year." ORS 342.815(8) includes

within the definition of "teacher" all "administrators" who hold teaching certificates and are employed by the district more than half time. ORS 342.815(1) defines an "administrator" as

> "any teacher the majority of whose employed time is devoted to service as a supervisor, principal, vice principal or director of a department or the equivalent in a fair dismissal district *but shall not include the superintendent, deputy superintendent or assistant superintendent of any such district* \* \* \*." (Emphasis supplied.)

■ Petitioner contends that he was a "permanent teacher" and, therefore, subject to the Fair Dismissal law because he spent the majority of his time as a principal. As indicated by the Board's findings, which petitioner does not challenge, he did spend the majority of his time as a principal. However, it does not necessarily follow that his status as a principal brings him within the definition of an "administrator" and, therefore, the definition of a "teacher." The problem with petitioner's argument is that the definition of "administrator" excludes one who is a "superintendent." Therefore, even if a person meets the definition of an administrator in all other respects, if that person is also a superintendent, he or she is not an administrator.

■ FDAB concluded that petitioner acted as the district's superintendent. ORS 342.815(3) defines "district superintendent" as "the superintendent of schools of a fair dismissal district or, in the absence of the superintendent, the person designated to fulfill the superintendent's functions." The administrative rules promulgated by the Department of Education further define "superintendent" as "[t]he district's chief administrator who reports directly to the school board." OAR 584-36-005(60). FDAB found that petitioner signed documents as "superintendent" or "principal/superintendent," that he performed the duties of the district's chief administrative officer, and that both he and the school board considered him to be the superintendent. FDAB's conclusion that petitioner was a superintendent is supported by its findings and is consistent with the statutory and regulatory definitions of the term.

Petitioner also asserts that he was a permanent teacher because the heading on his employment contracts

after he had worked in the district for three years was "permanent teacher contract." FDAB concluded that that heading was not determinative of petitioner's status in light of its findings that the parties placed little or no significance on the contract headings at the time those contracts were executed[2] and in light of petitioner's admitted role as principal and administrator. We agree. FDAB properly dismissed petitioner's appeal for lack of jurisdiction.

Affirmed.

---

[2] FDAB noted that the contract forms used were forms for teachers, not administrators, despite the fact that petitioner's duties were almost exclusively administrative. In addition, it noted that many of the provisions in the forms were illogical for petitioner's employment. For example, the contract form states that one duplicate copy is to be filed with the school district clerk, while the other is to be retained by the teacher. However, petitioner was, for purposes of the contract, both the teacher and the district clerk. Similarly, the contract form states that it must be signed by the chairman of the school board, the school district clerk, and the teacher. Petitioner's contracts were signed by the chairman of the board and by petitioner as "teacher," but no one signed on the line designated for "school district clerk." Finally, the form states that the contract may be declared void if not "signed by the teacher and returned to the clerk within 30 days." Of course, petitioner was both the clerk and the teacher under the contract, thus making this provision inapplicable here.